FILED
United States Court of Appeals
Tenth Circuit

September 30, 2010

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 08-3313

PATRICK E. WASHINGTON,

Defendant-Appellant.

**Appeal from the United States District Court
for the District of Kansas
(D.C. Nos. 5:06-CV-03154-DVB and 2:91-CR-20022-DVB-1)**

Henry E. Marines of Law Offices of Henry E. Marines, PA, Miami, Florida, for Defendant-Appellant.

Jared S. Maag, Assistant United States Attorney (Lanny D. Welch, United States Attorney, and James A. Brown, Assistant United States Attorney, on the brief), Office of the United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

Before **TACHA**, **SEYMOUR** and **LUCERO**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Petitioner Patrick E. Washington requests reversal of the district court's denial of his 28 U.S.C. § 2255 motion to vacate, correct, or set aside his sentence, claiming the district court erred in not holding his counsel's performance constitutionally deficient. We conclude that counsel's failure to understand the basic mechanics of the sentencing guidelines and, in particular, his failure to advise Mr. Washington regarding the impact of relevant conduct on his potential sentence prior to meeting with the probation officer, amounted to constitutionally deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). We also conclude that Mr. Washington was prejudiced as a result of the above failures because the facts he conceded at his presentence interview disqualified him from obtaining a two-level reduction pursuant to the 2007 Crack Cocaine Amendments, U.S.S.G. § 2D1.1(c), App. C, Amend. 706, 711 (2007) (Amendment 706). We therefore reverse.

**I.**

After almost twenty years, Mr. Washington's claims of ineffective assistance of counsel are finally before us. The story begins in February 1991, when Mr. Washington was indicted for three counts of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of using or carrying a firearm in connection with a crime, in violation of 18 U.S.C. § 924(c). To represent his defense, Mr. Washington retained Gary W. Long, II, an attorney

with some state court trial experience but no experience in federal court. Following a jury trial in May 1991, Mr. Washington was convicted on all three counts of possessing and distributing a total of 61.98 grams of cocaine base. He was acquitted of the charge of carrying a firearm.

Prior to his sentencing hearing, Mr. Washington attended a presentence interview with the probation officer assigned to his case. Mr. Long did not accompany him to this meeting, nor did he inform Mr. Washington about the purpose or legal significance of the interview. At the interview, Mr. Washington admitted to a drug distribution sales pattern of between 0.5 - 1.0kg of cocaine base every three weeks for three months in 1990. The probation officer determined that this admission resulted in an additional 2.5 kilograms of cocaine base attributable to Mr. Washington. The presentence report also contained information from a confidential government informant, who stated that Mr. Washington possessed and distributed approximately four kilograms of cocaine base between January and February 1991. Adding these amounts to the 61.98 grams of cocaine stemming from Mr. Washington's convictions in the instant case, the probation officer determined that Mr. Washington had distributed a total of 6.5 kilograms of cocaine base relevant to his sentence and thus recommended an applicable base offense level of 40.[1]

_____

[1] The United States Sentencing Guidelines provide that a defendant's base offense level "shall be determined on the basis of . . . all such acts and omissions

(continued...)

At sentencing, the district court considered as relevant conduct both the confidential informant's statements and the probation office's report regarding Mr. Washington's drug distribution activities between 1990-91, agreeing that the applicable base offense level was 40. In addition, the court imposed two two-level enhancements: one for obstruction of justice for Mr. Washington's attempt to kill the informant before the trial, and a second one for his role in the offense as a leader or organizer of a group with more than five participants. The resulting offense level of 44 was the highest possible under the 1991 mandatory sentencing guidelines. Given Mr. Washington's criminal history category of II, his resulting sentencing range was higher than the statutory maximum of 40 years for each of the counts of his conviction. The district court sentenced Mr. Washington to three forty-year terms of imprisonment to be served consecutively, for a total of 120 years.

Mr. Long failed to properly prosecute the appeal and was disbarred during its course from practicing before this court.[2] The Federal Public Defender was appointed to represent Mr. Washington on appeal. We affirmed Mr. Washington's conviction and sentence. *United States v. Washington*, 11 F.3d

---

[1](...continued)
that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. Sentencing Manual § 1B1.3(a)(2) (1991).

[2] In unrelated cases, Mr. Long was later suspended from practicing in the federal district court in Kansas for accepting a case he was not qualified to handle, and was thereafter disbarred in the State of Kansas.

1510 (10th Cir. 1993).

A.      *Mr. Washington's post-conviction motions*

In 1994, Mr. Washington filed his first post-conviction motion, seeking information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In 1996, the district court recharacterized a part of that motion as a habeas petition under 18 U.S.C. § 2255, and then denied it. Mr. Washington did not appeal. In 1997, Mr. Washington filed a § 2255 motion which the district court transferred to this court as a request for authorization to file a second or successive § 2255 motion. This court denied authorization.

In 1999, Mr. Washington filed a Rule 60(b)(6) motion for relief from the district court's judgment that recharacterized his FOIA motion. The district court denied the motion. We vacated the district court's decision for lack of jurisdiction to address what we considered to be another second and successive motion, and we denied authorization to file the motion.

In 2002, Mr. Washington filed a motion to reduce his sentence based on the sentencing commission's 1994 amendment to the sentencing guidelines, U.S.S.G. § 2D1.1(c)(1), which reduced the highest potential base offense level for drug offenses from 42 to 38. The district court granted the motion and reduced Mr. Washington's base offense level to 38. As a result, after adding the four-level enhancements, Mr. Washington's guideline range became 360 months to life for each of the three counts of conviction. The district court reduced Mr.

Washington's sentence to a total of thirty years on each count, to be served concurrently rather than consecutively.

In 2003, in *Castro v. United States*, the Supreme Court held:

[W]hen a court recharacterizes a *pro se* litigant's motion as a first § 2255 motion . . . the district court must notify the *pro se* litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on "second or successive" motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.

540 U.S. 375, 383 (2003). Relying on *Castro*, Mr. Washington renewed his Rule 60(b)(5) motion seeking relief from the district court's judgment that recharacterized his FOIA motion. The district court denied the motion for failure to meet the Rule 60(b)(5) requirements. We reversed and remanded, authorizing Mr. Washington to file an initial § 2255 motion. In doing so, we held that "[b]y *sua sponte* treating his motion as one under § 2255, the [district] court essentially used up [Mr. Washington's] one shot at attacking his convictions and sentence." *Washington v. United States,* No. 05-335 (10th Cir. 2006) (unpublished) (citation and quotation marks omitted) (alterations in original).

B.    *Mr. Washington's claims of ineffective assistance of counsel*

In his most recent *pro se* § 2255 motion filed after our decision permitting him to start anew, Mr. Washington included five grounds to support his contention that his sentence was improper. He claimed, *inter alia*, that the government had offered him a plea bargain, that he was informed about the offer,

and that Mr. Long was deficient in advising Mr. Washington to go to trial in the face of a pending offer of a ten-year sentence. Aple. Supp. App. at 31, 36, District Court Order, Nov. 5, 2008, at 14, 19 (hereinafter "*Order*"). In June 2008, the district court, having appointed J. Steven Schweiker to represent Mr. Washington, held an evidentiary hearing regarding the § 2255 motion. During this hearing, Mr. Schweiker, for the first time, argued that "it was ineffective assistance of counsel for Mr. Washington's attorney to not accompany him to the pre-sentence meeting with the probation officer or to at least advise him of the nature and possible consequences of the meeting, which resulted in Mr. Washington revealing to the probation officer incriminating information that increased his drug quantity by 2.5 kilograms." Aple. Supp. App. at 24. After the government objected to the claim's untimeliness, the district court took the matter under advisement. The court subsequently issued an order allowing Mr. Washington's new ineffective assistance of counsel claim to go forward.

Before ruling on Mr. Washington's § 2255 motion, the district court held a second evidentiary hearing regarding the alleged plea negotiations between Mr. Long and the prosecutor, Julie Robinson (now the Honorable Julie Robinson), and Mr. Long's conduct with respect to the presentence interview. Thereafter, in its November 2008 order, the district court determined that contrary to Mr. Washington's contentions: (1) the government did not offer Mr. Washington a plea bargain requiring it to recommend a ten-year sentence; (2) before Mr. Long

was appointed, and during Ms. Robinson's discussions with Mr. Washington, he indicated that he was not interested in cooperating with the government; (3) after Mr. Long was appointed, Ms. Robinson's conversations with Mr. Long regarding a possible plea agreement were general and preliminary in nature and never amounted to a specific and firm offer or agreement; and (4) Mr. Long proceeded to trial because Mr. Washington wanted to go to trial.[3]

As to Mr. Washington's ineffective assistance of counsel argument based on counsel's failure to be present at or to advise Mr. Washington regarding the ramifications of the presentence interview, the district court stated that it was inclined to afford Mr. Washington relief but concluded it was constrained by the holding in *United States v. Gordon*, 4 F.3d 1567, 1571-72 (10th Cir. 1993) ("Defendant had no Sixth Amendment right to the presence or advice of counsel during the presentence interview"). Mr. Washington filed a notice of appeal and an application for a COA.

When we initially granted Mr. Washington a COA, we limited its scope to "[w]hether the magnitude of trial counsel's error regarding the maximum sentence the defendant would face if he went to trial amounts to ineffective assistance

---

[3] As the district court observed, "Mr. Washington had a defense, claiming he did not sell crack cocaine or any other illegal substance to Mr. Hunter. As Mr. Long testified, Mr. Washington maintained he was innocent of any drug deals." *Order* at 22. "[E]ven if it were true that Mr. Long wrongly believed the worst outcome for Mr. Washington was ten years in prison, there is no showing that even a clearer understanding of the risks would have caused Mr. Washington's case not to go to trial." *Id.* at 23.

under *Strickland v. Washington*, 466 U.S. 668 (1984), in light of this circuit's precedent in *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)." Apr. 6, 2009 COA. After hearing oral arguments, we expanded the scope of the COA by "granting Mr. Washington's initial request to proceed in this appeal on the second question presented in his brief: whether his counsel's failure to understand the importance of relevant conduct to his potential sentence, in particular his failure to advise Mr. Washington regarding how to handle the presentence investigation meeting between the probation officer and Mr. Washington, amounted to constitutionally deficient performance under *Strickland v. Washington*, 466 U.S. 668." Apr. 8, 2010 COA. We also instructed the parties "to address whether Mr. Washington has established there was a reasonable probability that but for counsel's deficient performance he would have likely received a lower sentence. *See Glover v. United States*, 531 U.S. 198, 200 (2001) ('[I]f an increased prison term did flow from an error the petitioner has established *Strickland* prejudice'); *United States v. Horey*, 333 F.3d 1185, 1188 (10th Cir. 2003) (same). Application note 10(D)(ii)(I)) to the 2007 Crack Cocaine Amendment U.S.S.G. 2D1.1." *Id.*

## II.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

defense." U.S. Const. Amend. VI; *Kansas v. Ventris*, 129 S. Ct. 1841 (2009). A defendant who claims ineffective assistance of counsel must show that "counsel's representation fell below an objective standard of reasonableness," and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. "We review the district court's legal ruling on a § 2255 motion de novo and its findings of fact for clear error." *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006).

Mr. Washington first contends his counsel was constitutionally deficient in failing to advise him properly regarding the government's plea offer. Even assuming that defense counsel's performance was deficient, however, the district court's factual finding that the government never made a firm plea offer finds adequate support in the record. Thus, Mr. Washington cannot make the requisite *Strickland* showing that but for Mr. Long's ineffective assistance, he would have pled guilty. *See United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997) (in collateral attack upon trial counsel's advice regarding accepting plea offer, *Strickland*'s prejudice prong requires "there must be a reasonable probability that but for incompetent counsel a defendant would have accepted the plea offer and pleaded guilty." (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Turning to Mr. Washington's second argument, he asserts that trial counsel's failure to understand the importance of relevant conduct to his potential

sentence, and to advise him regarding the nature and purpose of the presentence interview, amounted to ineffective assistance of counsel. In determining whether Mr. Long's performance fell below an objective standard of reasonableness, the district court stated its inclination to afford Mr. Washington relief:

> [I]t was constitutionally deficient for [Mr. Long] to fail to advise [Mr. Washington] about the consequences of his admissions at the pre-sentence meetings. . . . Under the circumstances, to be a competent counselor, Mr. Long should have either accompanied Mr. Washington to the meeting, or at least advised Mr. Washington not to disclose the information about his previous drug dealing. Mr. Washington had absolutely nothing to gain and a great deal to lose by volunteering the information.

*Order* at 32. The court denied relief, however, because it felt bound to follow what it believed was required by Tenth Circuit precedent. In doing so, the court characterized *Gordon*, 4 F.3d at 1571-72, as holding that "failing to advise a client either prior to or during the pre-sentence investigation does not constitute ineffective assistance of counsel." *Id.* at 35. The court observed, however:

> The *Gordon* case was decided fifteen years ago, and involved considerably different facts than Mr. Washington's. As indicated above, the facts in this case appear to this court to make a compelling case for a finding that the pre-sentence interview of the defendant was a critical stage of the proceedings. Indeed, in some respects, the consequences of that meeting had more impact on the defendant's sentence than the trial itself. Nevertheless, given the clarity of the Tenth Circuit Court's pronouncement in *Gordon*, this court cannot in good faith distinguish the facts to reach a different result. With respect, perhaps it may be time to reexamine *Gordon*. If the habeas corpus protection is seriously focused on the day-to-day standard of performance expected of criminal defense lawyers in determining what constitutes ineffective assistance of counsel, it would seem that a wholesale failure to advise a client based on a complete lack of

understanding of the federal sentencing structure, would violate such a standard. Especially where, as here, such a failure has such serious adverse consequences for the client.

*Id.* at 35-36 n.4.

Our precedents have foreclosed the issues of whether counsel's failure to predict a defendant's sentence accurately rises to the level of deficient performance, *see Gordon*, 4 F.3d at 1570-71 (holding that it does not), and whether a counsel's failure to represent and advise a defendant *at* a presentence interview could amount to ineffective assistance of counsel. *See United States v. Smith*, 929 F.2d 1453, 1458 n.2 (10th Cir. 1991) ("[A] routine post-conviction pre-sentence interview is not a 'critical stage' of the proceedings *at which* a defendant has a Sixth Amendment right to be *represented* by counsel." (quoting *United States v. Rogers*, 899 F.2d 917, 919-20 n.7 (10th Cir. 1990) (emphasis added))); *Gordon*, 4 F.3d at 1572 ("Because the probation officer does not act on behalf of the government, we join those circuits that have concluded that the presentence interview is not a critical stage of the proceeding within the meaning of the Sixth Amendment.")).

Courts have long recognized the sentencing process as a critical stage of the criminal proceedings. *See Mempa v. Rhay*, 389 U.S. 129, 136-37 (1967) (holding that Sixth Amendment right to counsel extends to sentencing proceedings, including probation revocation proceedings, and recognizing that assistance of counsel "assume[s] increased significance when it is considered that

-12-

. . . the eventual imposition of sentence on the prior plea of guilty is based on the alleged commission of offenses for which the accused is never tried."); *see also Gardner v. Florida*, 430 U.S. 349 (1977) (reaffirming that sentencing is a critical stage); *United States v. Johnson*, 534 F.3d 690, 693 (7th Cir. 2008) ("[T]he Sixth Amendment guarantees the right to counsel at all critical stages of the prosecution, and this right is applicable during sentencing  hearings." (quoting *United States v. Irorere*, 228 F.3d 816, 826 (7th Cir. 2000) (internal citations and quotation marks omitted))); *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006) ("[p]lea negotiations, guilty plea hearings, and sentencing hearings are all 'critical stages' at which the right to counsel attaches.").

Moreover, in the context of "critical" stages of criminal proceedings, we have recognized that "effective assistance is guaranteed for the whole . . . process." *See Williams v. Jones*, 571 F.3d 1086 (10th Cir. 2009) (denoting that "plea bargaining process is a critical stage of a criminal prosecution," *id.* at 1091, and that "effective assistance is guaranteed for the whole plea process, not just in connection with accepting . . . a plea agreement, *id.* at 1092."). In *Williams*,

> *The deficient performance was counsel's advice concerning the plea agreement*–advising Mr. Williams he would be committing perjury by accepting the plea offer and insisting that Mr. Williams proceed to trial or find new counsel if he wanted to accept it.

*Id.* (emphasis added).  This principle is no less applicable in the context of sentencing proceedings.  Indeed, as the district court noted, "in some respects, the

consequences of [the presentence] meeting had more impact on the defendant's sentence than the trial itself[.]" *Order* at 35-36 n.4.

Contrary to the district court's conclusion, *Gordon* did not address whether a counsel's representation can fall below the Sixth Amendment objective standard of reasonableness as a result of his failure to understand the basic structure and mechanics of the sentencing guidelines. Rather, the sentencing issue there involved original counsel's *miscalculation* regarding the impact of relevant conduct upon his sentence. *See Gordon*, 4 F.3d at 1569, 1570. Mr. Gordon's original counsel had advised him regarding relevant conduct, but had predicted that the court would not add to his sentence for such conduct. *Id*. at 1569. ("[P]rior to Defendant's plea of guilty, [original counsel] had informed Defendant that 'it was [original counsel's] opinion that [Defendant] would not be assessed the relevant conduct adjustment for the drugs involved in all remaining counts.'"). Although defense counsel's predictions later proved incorrect, our precedent was clear that "a miscalculation or erroneous sentence estimation by a defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *Id*. at 1570-71. Moreover, the sentencing court had thereafter informed Mr. Gordon at his plea hearing that relevant conduct could be considered in determining his sentence. *Id*. at 1571 ("the court also explained that in computing Defendant's sentence, 'the court can and will consider all available information including factual data relating to any counts dismissed or

about to be dismissed.'") (citation omitted). And "[d]efendant pleaded guilty even after being so informed by the court." *Id.* As a consequence, we concluded "[Mr. Gordon] has failed to show that original counsel's *failure to predict* the relevant conduct inclusion in his offense level constituted ineffective assistance of counsel entitling him to relief." *Id.* at 1570.[4]

The instant case is not one of misinformation by counsel; rather, the record reflects that Mr. Washington was never *in any way* informed about the applicability or impact of relevant conduct because his counsel did not understand its significance in the sentencing scheme. As a panel of this court has pointed out, "failing to predict a sentence correctly is not the same as failing to understand the mechanics of the sentencing guidelines . . . ." *United States v. Contreras-Castellanos*, 191 F. App'x 773, 776 n.1 (10th Cir. 2006). Although *Contreras-Castellanos* does not constitute precedent, *see* 10th Cir. R. 32.1, we are persuaded by its analysis and that of the cases it relies on: *United States v. McCoy*, 215 F.3d 102, 108 (D.C. Cir. 2000); *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). As the court pointed out in *McCoy*:

---

[4] In concluding that Mr. Gordon failed to show original counsel was constitutionally deficient, we also relied on Mr. Gordon's failure to establish prejudice deriving from the disputed conduct. *See Gordon*, 4 F.3d at 1571 (counsel's miscalculation was not prejudicial because the court thereafter explained the impact of relevant conduct at the plea hearing and Gordon pled guilty after being so informed). On the other hand, for the reasons we discuss *infra*, Mr. Washington has succeeded in establishing prejudice flowing from his original counsel's failure to understand the sentencing process.

McCoy's counsel failed to follow the formula specified on the face of the Guidelines. Of course not every error made in applying the Guidelines amounts to deficient performance under the standard of *Strickland* but, as a sister circuit pointed out some years ago . . . 'familiarity with the structure and basic content of the Guidelines . . . has become a necessity for counsel who seek to give effective representation.'

*McCoy*, 215 F.3d 108 (quoting *Day*, 969 F.3d at 39, 43).

*Contreras-Castellanos*, *McCoy*, and *Day* thus distinguish ordinary errors in applying the guidelines from complete unfamiliarity with their basic structure and mechanics and conclude that the latter may amount to ineffective assistance of counsel. As the court said in *Day*:

[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer. *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (voluntariness of guilty plea depends on adequacy of counsel's advice); *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.").
    *Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty. See, for example, Williams v. State*, 326 Md. 367 (1992) (counsel's conduct was constitutionally deficient in failing to advise petitioner of mandatory 25-year sentence upon conviction at trial when offer to plead guilty to lesser offense involved exposure only to ten-year sentence); *Commonwealth v. Napper*, 254 Pa.Super. 54 (1978) (counsel ineffective in giving no advice about desirability of plea offer with three-year maximum sentence when trial risked ten to forty years and defendant's chances of acquittal were slim).

*Day*, 969 F.2d at 43 (emphasis added). Similarly, knowledge about the structure and mechanics of the sentencing guidelines and the sentencing process will often

-16-

be crucial to advising a defendant about how to conduct himself through the sentencing process. Accordingly, we hold that a defendant may prevail on the first prong of the *Strickland* test if he/she can establish that counsel failed to understand the basic structure and mechanics of the sentencing guidelines and was therefore incapable of helping the defendant to make reasonably informed decisions throughout the criminal process.

Our conclusion is supported by the Supreme Court's pronouncement that the guarantee of effective assistance "requires the guiding hand of counsel at *every* step in the proceedings against him." *Kimmelman v. Morrison*, 477 U.S. 365, 380 n.5 (1986) (emphasis in original). The Sixth Amendment right to counsel attaches when adversary judicial criminal proceedings are initiated against a defendant. *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972).

> This extension of the right to counsel to events before trial has resulted from changing patterns of criminal procedure and investigation that have tended to generate pretrial events that might appropriately be considered to be parts of the trial itself. At these newly emerging and significant events, *the accused was confronted,* just as at trial, *by the procedural system, or by his expert adversary, or both.*

*United States v. Ash*, 413 U.S. 300, 310 (1973) (re-examining the history of right to counsel in Anglo-American law) (emphasis added). "In all cases considered by the Court, counsel has continued to act as a *spokesman for*, or *advisor to*, the accused. The accused's right to the 'Assistance of Counsel' has meant just that, namely, the right of the accused to have counsel acting as his assistant." *Id.* at

312 (emphasis added).  Even though the Court has limited the necessity for counsel's *presence* as the spokesman for the defendant to critical stages where defendant's expert adversary is present, *see United States v. Wade*, 388 U.S. 218, 228 (1967) (in non-critical stages "there is minimal risk that . . . counsel's absence at such stages might derogate from [the] right to a fair trial"), the Constitution's guarantee of counsel's guiding hand and advice regarding every step of his defense proceedings remains intact.  *See* U.S. Const. Amend. VI; *Kimmelman*, 477 U.S. at 380 n.5.

The purpose of this constitutional guarantee "is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights."  *Rothgery v. Gillespie County*, 554 U.S. 191 (2008) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938)).  To determine the scope of that guarantee, the Supreme Court "has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary."  *Ash*, 413 U.S. at 313.  Through this lens, counsel's wholesale failure in the instant case to grasp the sentencing process, and in particular his failure to advise Mr. Washington regarding the purpose of the presentence interview, may constitute representation that falls below the objective standard of reasonableness.  Accordingly, although Mr. Washington did not have a right to the presence of counsel at the presentence interview, *see Smith*, 929 F.2d at 1458 n.2, he did have a right to counsel's advice regarding the impact of

relevant conduct on the sentencing process, as well as the nature and purpose of the presentence interview. As a plurality of the Supreme Court pointed out in *Gardner*:

> [T]he sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel. The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process.

430 U.S. at 358 (internal citations omitted).[5]

In addressing counsel's training and his skills in defending Mr. Washington, the district court found:

> Prior to the [presentence] meeting, defense attorney Long did not advise Mr. Washington about the possible legal ramifications of the meeting. He did not explain to Mr. Washington what would happen at such a meeting, nor did he advise Mr. Washington to refuse to answer certain questions or to avoid certain areas of inquiry.

*Order* at 31.

---

[5] Although *Ash* offers applicable insight, the dissent overstates the relevance of *Ash* to this case. The issue presented in *Ash* was "whether, under the Sixth Amendment, a person who has been indicted is entitled to have a lawyer *present* when prosecution witnesses are shown the person's photograph and asked if they can identify him. . . . [T]he only question is whether that procedure was such a 'critical stage' that the Constitution required the *presence* of counsel." *Ash*, 413 U.S. at 321-322. Our focus here is not on whether Mr. Washington was entitled to have his lawyer present *at* the presentence interview, but rather whether he was entitled to effective advice of counsel with respect to the sentencing process.

Mr. Washington had absolutely nothing to gain and a great deal to lose by volunteering the information about his earlier drug trade. At the time of the meeting with the probation officer, Mr. Washington had no realistic chance of qualifying for acceptance of responsibility points. He had chosen to go to trial and had attempted to have the government's main witness killed. The only consequence of admitting to other drug deals would be to increase the quantity of drugs attributable to him as relevant conduct and thereby increase his sentence.

*Id*. at 32.

Even considering the fact that the Federal Sentencing Guidelines were relatively new in 1991, it appears that Mr. Long's failure to advise his client about the pre-sentence meeting fell below the standard of competence expected of defense counsel. *Even the most rudimentary understanding of the sentencing laws with their clear reference to the use and effect of relevant conduct in determining the final sentence, should have caused a criminal defense attorney to at the very least put his client on notice that disclosure of past drug deals to the probation officer could, and most probably would, lead to extra time in prison.*

*Id.* at 33 (emphasis added).

In addition, the district court observed that "[t]he prosecutor in the case, Julie Robinson (now the Honorable Julie Robinson), acknowledged . . . at the [evidentiary] hearing on Oct. 10, 2008," that Mr. Long's representation of Mr. Washington was unreasonable. *Id*. at 33. She stated,

Well, I think – I think it's deficient. . . . I can tell you that when I became a district judge . . . I made it a point to tell the defendant who was entering a plea that it would be important to have his attorney – his or her attorney with them during the pre-sentence investigation because of situations like [Mr. Washington's].

*Id.* (quoting Evidentiary Hearing, October 10, 2008, Trans., p. 17.).

On this record, we conclude that Mr. Long's representation of Mr. Washington was objectively unreasonable when he failed to understand the importance of relevant conduct to Mr. Washington's potential sentence and therefore failed to so inform Mr. Washington regarding its significance prior to his presentence interview.

As to the second prong of the *Strickland* test, Mr. Washington must show there is a reasonable probability that but for Mr. Long's deficient performance, he would likely have received a lower sentence. *See Glover*, 531 U.S. at 200; *Horey*, 333 F.3d at 1188. Mr. Washington asserts, and we agree, that he was prejudiced as a result of Mr. Long's deficient performance because Mr. Washington's admissions during the presentence interview eventually resulted in his loss of a downward adjustment pursuant to the 2007 Crack Cocaine Amendments, U.S.S.G. § 2D1.1(c), App. C, Amend. 706, 711 (2007).

As we have noted, the sentencing guidelines were amended retroactively in 1994 to establish level 38 as the highest possible offense level based on the quantity of drugs. As a result, Mr. Washington's original base offense level of 40, based on 6.5 kilograms of cocaine base, was reduced to level 38. Given the four points which were added to the base offense level for obstruction of justice and his role in the offense, Mr. Washington's total offense level was reduced from 44 to 42. In 2007, Congress passed the crack cocaine amendments to the sentencing guidelines, which provided for a two-level reduction in a defendant's

base offense level, subject to some exceptions.  *See* U.S.S.G. § 2D1.1(c), App. C, Amend. 706, 711 (2007).  The amendments were made retroactive on March 3, 2008.  *United States v. Corber*, 596 F.3d 763, 765 (10th Cir. 2010).  The two-level reduction does not apply if  "the offense involved 4.5 kg or more[.]"  U.S.S.G. § 2D1.1 app. n.10(D)(ii)(I).

As we noted in *Horey*, "any amount of actual jail time has Sixth Amendment significance" and "there is no obvious dividing line by which to measure how much longer a sentence must be for the increase to constitute . . . prejudice."  333 F.3d at 1188 (quoting *Glover*, 531 U.S. at 203) (finding prejudice where "there is an increase in the actual amount of jail time that may be served using the improperly-applied guideline range")); *see also id.* ("[T]he amount by which a defendant's sentence is increased by [counsel's] particular decision . . . cannot serve as a bar to a showing of prejudice." (quoting *Glover*, 531 U.S. at 204) (alterations in original)).  The district court was thus correct in concluding that Mr. Washington was prejudiced:

> Mr. Washington's voluntary disclosures to the probation officer, which moved his drug quantity from 4 kilograms to 6.5 kilograms, had an adverse effect on Mr. Washington.  If the 2.5 kilograms were not counted he would have qualified for the 2007 Amendment. That adjustment would have entitled Mr. Washington to a two-level downward adjustment, based on the 1991 Guidelines. This would reduce his overall offense level to 40 which indicates a sentence between 324 and 405 months.

*Order* at 34-35.

Based on the foregoing, it is reasonably probable that the district court may choose to sentence Mr. Washington to the minimum number of months required by the sentencing guidelines range. Accordingly, Mr. Washington has shown there is a reasonable probability that, but for Mr. Long's deficient performance, he would have received a lower sentence of 324 instead of the 360 months to which he was sentenced.

We **REVERSE** the district court's opinion in part and **REMAND** for further proceedings in accordance with this opinion.

No. 08-3313, *United States v. Washington*

**TACHA**, Circuit Judge, dissenting in part.

I join the portion of the majority's opinion which finds support in the record for the district court's determination that the government never made a firm plea offer to Mr. Washington. I respectfully dissent, however, from the portion of the majority's opinion which grants Mr. Washington habeas relief based on his counsel's failure to understand and inform him about the significance of relevant conduct prior to his presentence interview. In my view, our decision in *United States v. Gordon*, 4 F.3d 1567 (10th Cir. 1993) forecloses Mr. Washington's ineffective assistance of counsel claim.

"[T]he right to effective assistance of counsel is dependent on the right to counsel itself." *Evitts v. Lucey*, 469 U.S. 387, 397 n.7 (1985). Accordingly, if there is no constitutional right to counsel there can be no deprivation of the right to effective assistance of counsel. *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) (per curium). Because the Sixth Amendment guarantees criminal defendants the right to counsel only during critical stages of the prosecution, *see United States v. Ash*, 413 U.S. 300, 321 (1973) (Stewart, J., concurring), whether Mr. Washington's counsel's alleged ineffective assistance occurred during a critical stage is a threshold inquiry.

In *Gordon*, we joined our sister circuit courts in holding that "the presentence interview is not a critical stage of the [criminal] proceeding within the meaning of the Sixth Amendment." 4 F.3d at 1572. We therefore denied the

defendant's claim for relief based on ineffective assistance of counsel. *Id.* Although the majority recognizes that *Gordon* is still good law in this circuit, it attempts to limit *Gordon*'s holding to the precise moment of the presentence interview. See Maj. Op. at 11–12. I cannot agree with the majority's position. Besides standing contrary to our clear language in *Gordon*, the majority's limited reading creates an arbitrary distinction under which a defendant has the constitutional right to the advice of and information from his attorney before the presentence interview but does not have the right to such advice and information once the interview has begun. *Gordon*, of course, makes no such distinction.

Moreover, I am not persuaded by the majority's citations to *United States v. Contreras-Castellanos*, 191 F. App'x. 773 (10th Cir. 2006) (unpublished); *United States v. McCoy*, 215 F.3d 102 (D.C. Cir. 2000); and *United States v. Day*, 969 F.2d 39 (3d Cir. 1992). All of those cases involved counsel's failure to properly advise the defendant regarding the sentencing guidelines during the *plea bargaining* process. Because the plea bargaining process, in contrast to the presentence interview, is a critical stage of criminal proceedings, *see Williams v. Jones*, 571 F.3d 1086, 1091 (10th Cir. 2009), those cases are inapposite.

Accordingly, I cannot agree that the district court's denial of habeas relief in this case was erroneous. *Gordon* set forth the applicable rule at the time of the district court's decision, and although the continued propriety of its holding may be worthy of review, we remain bound by it today. *In re Smith*, 10 F.3d 723, 724

-2-

(10th Cir. 1993) ("We are bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court."). I therefore respectfully dissent.