**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 23, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GERALD R. RISING, JR., a/k/a Gerry
Rising,

    Defendant - Appellant.

No. 14-1518
(D.C. Nos. 1:13-CV-01056-WYD and
1:11-CR-00117-WYD-1)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HOLMES**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
_____

On October 26, 2011, Gerald R. Rising pleaded guilty to one count of mail fraud,

one count of theft or embezzlement in connection with a healthcare program, and one

count of money laundering. In his plea agreement, Rising waived his right to appeal

his sentence; and he also waived his right to collaterally attack his prosecution,

conviction, or sentence except for any relief from a retroactive change to the

sentencing guidelines, for denial of the effective assistance of counsel, or for

prosecutorial misconduct. Ultimately, Rising was sentenced to a below-advisory-

guideline sentence of 66 months. Rising did not try to appeal his sentence.

---

[*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On December 2, 2014, Rising filed this 28 U.S.C.§ 2255 motion, raising four claims: (1) ineffective assistance of counsel for failing to raise and argue meritorious defenses and by advising Rising to plead guilty; (2) prosecutorial misconduct; (3) ineffective assistance of counsel resulting in an excessive sentence and failure to perfect an appealable error; and (4) actual innocence. On April 15, 2015, Rising filed a second motion seeking an order on his § 2255 motion and entry of final judgment and, on May 13, 2015, he filed a third. The district court denied Rising's motions and declined to issue a certificate of appealability. Rising has applied to this court for a certificate of appealability to challenge the district court's ruling. We deny that request.

I.    Factual and Procedural Background

On April 4, 2011, a federal grand jury charged Rising with one count of mail fraud, one count of theft or embezzlement in connection with a health care program, eighteen counts of money laundering, and eighteen counts of aiding or abetting money laundering. The charges stemmed from Rising's ownership and operation of a business, Rural Health Plans Initiative Administration (RHPI), a closely held Colorado corporation that sold and administered health-benefit and employee-welfare plans to various business entities including school districts. Rising and RHPI "represented that it would retain part of plan contributions, approximately 20%, for administrative costs, and that the remainder was to be held in a designated trust account to pay claims . . . and to purchase excess loss or stop-loss coverage . . . through established insurance providers like Lloyd's of London and AIG to cover any

2

claims that exceeded $25,000." *Id.* Rising also incorporated RHPI Captive Insurance Co., Ltd. (RHPIC) in Anguilla, British West Indies to maintain residual fund contributions. Plea Agreement 10. As stipulated in the plea agreement, RHPIC was created "to avoid regulation by the Colorado Board of Insurance." *Id.* at 11.

In 2003, RHPI began to experience financial problems after incurring "unplanned for catastrophic losses." Tr. of Change of Plea 25. As a solution, Rising used incoming premium contributions to fund claims incurred in earlier months. From then forward, Rising falsely represented to his customers that RHPI would maintain in trust the money each plan holder contributed to its plans and use that money to pay claims of each plan's beneficiaries. He also falsely represented that insurance companies, such as Lloyd's of London and AIG, would provide stop-loss coverage at $25,000, meaning that once RHPI had paid out $25,000, one of those insurance companies would cover any further medical expenses. In fact, those policies did not provide coverage until the medical expenses reached $125,000. *Id.* Through these misrepresentations, RHPI significantly underestimated to its customers the risk that it would not be able to pay out claims.

In 2008 and 2009, Rising "increased his salary in order to siphon monies held by RHPIC for the benefit of plan beneficiaries." Plea Agreement 11. In 2009 and 2010, Rising "began to kite checks between various bank accounts he controlled for himself, RHPI and RHPIIIC, in order to create a false impression as to the financial status of the businesses as he solicited their sale." *Id.*; *see* Tr. of Change of Plea 26 (admitting this fact to the court). Rising also "directed employees to falsely represent

3

to various plan beneficiaries and employers that the claims for health care services were in fact paid when they were not . . . ." Plea Agreement 11; *see* Tr. of Change of Plea 27. Additionally, he "directed employees to send balance statements to plan employers that falsely represented balances in their accounts because such statements were influenced by the issuance of checks that were held at [Rising's] direction, and never sent." Plea Agreement 11–12. In 2010, Rising had invoices mailed to plan employers "that billed and created a false indebtedness to the employers for payments RHPIC made of beneficiary and health care provider claims." *Id.* at 12.

Rising retained Gregory Goldberg of Holland & Hart to represent him throughout the criminal prosecution. *See* Appellant Rising's Combined Opening Br. and Appl. for a Certificate of Appealability 2. Afterward, Rising cooperated with the prosecution, producing his financial records, helping decipher those records, and meeting with victims. On October 26, 2011, Rising pleaded guilty to one count of mail fraud, one count of theft or embezzlement in connection with a health care program, and one count of money laundering. As a part of the plea agreement, the parties stipulated that Rising had caused victim losses of more than $2.5 million but not more than $7 million. As mentioned, as part of his plea agreement Rising also agreed to waive his right under 28 U.S.C. § 2255 to collaterally attack his conviction and sentence, except challenges based on a retroactive change in the guidelines, ineffective assistance of counsel, or prosecutorial misconduct.

During the Rule 11 colloquy, Rising explained his criminal conduct to the district court and admitted all stipulated facts in the plea agreement. The court advised

4

Rising of the consequences of pleading guilty and thoroughly reviewed with him the rights he was waiving. In addition, the court reviewed the plea agreement's terms with Rising, verified that Rising had reviewed the agreement with his attorney, and verified that Rising was satisfied with his counsel's performance.

Based on the presentence report, which incorporated the parties' agreed guideline calculations, the probation office recommended a sentence of 72 months, below the applicable advisory range of 87 to 108 months (resulting from a total offense level 29, and a criminal history category I). Based on Rising's "extraordinary" cooperation in the investigation, the government recommended a sentence of 60 months. *See* Government's Resp. to Def.'s Mot. for Downward Departure and/or Variance from the Sentencing Guidelines Pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(a) (Doc. 56) 1–2 (requesting a sentence of no less than 60 months); Tr. of Sentencing 20 (requesting a sentence of 60 months). Rising joined the government in its 60-month recommendation. *See* Mot. for Downward Departure and/or Variance from the Sentencing Guidelines Pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(a) 7 (requesting a sentence below 60 months); Tr. of Sentencing 37 (requesting a sentence of 60 months). Ultimately, the district court sentenced Rising to 66 months of imprisonment.

On April 22, 2013, Rising filed this 28 U.S.C. § 2255 motion challenging his sentence. On August 27, 2013, Rising also filed a Pro Se Motion for Partial Summary Judgment, and on September 24, 2013, he filed a Pro Se Motion for an Evidentiary

Hearing on Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 USC § 2255 by a Person in Federal Custody. The government responded and Rising replied.

Even before the district court ruled on the merits, Rising applied to this court for a mandamus order directing the district court to decide his § 2255 motion, which this court denied. After this, the district court denied Rising's motions. In response, on December 2, 2014, Rising filed a Pro Se Motion for Reconsideration of This Court's Order Denying Habeas Corpus Relief. The district court dismissed that motion for lack of jurisdiction as a second or successive habeas petition. This appeal of the initial § 2255 ruling followed.

## II.    Discussion

Because Rising proceeds pro se, we review his pleadings and filings liberally. *See Haines v. Kerner*, 404 U.S. 519. 520–21 (1972); *Lewis v. C.I.R.*, 523 F.3d 1272, 1273 n.2 (10th Cir. 2008). We must address the jurisdictional prerequisites of whether to grant Rising a COA on his claims before we can reach the merits. 28 U.S.C. § 2253(c)(1)(B); *United States v. Tony*, 637 F.3d 1153, 1157 (10th Cir. 2011). We will issue a COA only "if the [movant] has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). A movant can satisfy this standard by demonstrating that "reasonable jurists could debate whether . . . the [§ 2255 motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Tony*, 637 F.3d at 1157 (omission in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

We conclude that Rising has not made an adequate showing here. Accordingly, we deny his request for a COA and dismiss his appeal.

### a. Evidentiary Hearing

At the outset, we will address Rising's concerns over the district court's denial of an evidentiary hearing. Section 2255 requires an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). We review the district court's decision for abuse of discretion. *See United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004); *see also United States v. Moya*, 676 F.3d 1211, 731 (10th Cir. 2012). "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004). We conclude that the district court did not abuse its discretion by denying Rising an evidentiary hearing and deciding the case on the existing record.

Rising argues that the district court improperly made six findings of fact "without conducting an evidentiary hearing, evaluating the facts, and, most importantly, providing Rising with the Due Process requirements of the United States Constitution." Appellant Rising's Combined Opening Br. and Appl. for a Certificate of Appealability 1. These six findings are as follows:

- "I also find that Mr. Rising has raised merely the possibility that his counsel made choices pursuant to a business model, not that he actually did." Dist. Ct. Op. 15.

7

- "Indeed, Mr. Rising does not identify any specific instances where his attorney Mr. Goldberg was forced to make, or made, choices to Mr. Rising's detriment." *Id.* at 16.
- "I also find that Mr. Rising has not shown that he would have insisted on a trial if counsel had done a more thorough investigation. *Id.* at 19.
- "Based upon the foregoing, I find no merit to Mr. Rising's argument that his counsel's failure to investigate or prepare for trial or argue meritorious defenses constituted ineffective assistance of counsel." *Id.* at 23.
- "Finally, I find that defense counsel was not ineffective for advising Mr. Rising to plead guilty and to cooperate." *Id.*
- "I find that Mr. Rising cannot meet his burden of proving he is actually innocent under either a freestanding or gateway claim." *Id.* at 36.

We see no problems with any of the listed comments by the district court. We note that four of the comments are legal conclusions premised on facts in the record (the third, fourth, fifth, and sixth listed above), and the others are comments about the insufficiency of the evidence Rising suggests he will offer.

### b. Ineffective Assistance of Counsel

Rising argues that his trial counsel rendered constitutionally ineffective assistance in multiple ways: by failing to raise and argue meritorious defenses, by advising him to plead guilty, by continuing his representation despite a conflict of interest, by permitting an excessive sentence, and by failing to perfect an appealable error.

In *Strickland v. Washington*, the Supreme Court announced a two-part test that governs ineffective-assistance-of-counsel claims. 466 U.S. 668, 687 (1984). First, "[a] petitioner must show that counsel's performance was deficient." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must show that counsel's deficiency "prejudiced the defense." *Id.*

8

"To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* (internal quotation marks omitted); *see Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). A petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To establish *Strickland'*s prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The *Strickland* analysis applies in the context of guilty pleas as well. *See Missouri v. Frye*, 132 S. Ct. 1399, 1403 (2012). "[A] defendant complaining that ineffective assistance led him to accept a plea offer instead of going to trial [must] show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill v. Lockhart*, 474 U. S. 52, 59 (1985)).

Counsel's performance here was not deficient under any of Rising's theories.

> i. Failure to note and argue meritorious defenses and rendering deficient advice

Rising asserts that his counsel was deficient in advising him to plead guilty and thus to waive valid defenses. Rising complains that "[t]he entire defense was centered around negotiating a plea of guilty, nothing else." *See* Gerald Rising's Pro

9

Se Mem. of Args. & Authorities in Supp. of Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 USC § 2255 by a Person in Federal Custody 3. Here we have no trouble concluding that the advice to plead guilty was strategic (undoubtedly weighing as part of the decision the government's proof of Rising's guilt) and was not "below an objective standard of reasonableness." *Wiggins*, 539 U.S. at 521. It stands to reason that when faced with strong evidence of guilt, it is sound strategy to cooperate with the government to try to gain a better outcome.[1]

Rising ignores the considerable benefits afforded him by the plea agreement. For instance, the government agreed not to seek an upward departure, agreed to dismiss multiple counts of the indictment, agreed not to pursue certain assets as belonging to Linda Sue Rising, recommended a three-level reduction for acceptance of responsibility, and ultimately recommended a downward departure based on Rising's cooperation as well as a variant sentence of 60 months. Absent his pleading, and even assuming convictions just on the counts to which he pleaded guilty, Rising would have faced an advisory sentencing range of 108 to 135 months (based on a total offense level of 31 and a criminal history category of I). By pleading, Rising reduced his guideline range to 87 to 108 months. And ultimately, based on the

---

[1] On September 30, 2015, Rising filed a Motion for Submission of Supplemental Case Authority, citing *United States v. Washington*, 619 F.3d 1252 (10th Cir. 2010).We have reviewed *Washington* and find it provides Rising no help. The case distinguishes "ordinary errors in applying the guidelines from complete unfamiliarity with their basic structure and mechanics and conclude[s] that the latter may amount to ineffective assistance of counsel." *Id.* at 1259. Here, the record demonstrates that Rising's counsel was obviously more than familiar with the guideline structure.

government's request for a downward departure, Rising received a 66-month sentence, a substantial reduction from the sentence he likely would have received had he not pleaded guilty and cooperated with the government.

Rising attempts to raise an ineffective assistance claim based on his counsel's failure to obtain the services of a forensic accountant or otherwise challenge the government's inability to establish a firm loss figure. But "[w]e evaluate conduct from counsel's perspective at the time, not in hindsight." *Hooks v. Workman*, 689 F.3d 1148, 1189 (10th Cir. 2012) (citing *Rompilla v. Beard*, 545 U.S. 374, 381 (2005)). Based on counsel's statements, it appears that Rising's records were complex and unhelpful to his defense. *See* Tr. of Sentencing 16 ("Now the records themselves amounted to about 70 boxes of financial records, plus some computer records. It was massive."). Rising has not explained how hiring a forensic accountant would have been anything but futile. *See id.* ("[A]fter we tried to make sense of his records and his own accountant tried to make sense of his records, they were essentially worthless."). Rising has failed to overcome the "strong presumption" that his counsel's performance was within the range of "reasonable professional assistance." *Strickland*, 466 U.S. at 689.

### ii.  Conflict of Interest

Rising alleges that defense counsel was ineffective because he suffered from a conflict of interest: counsel purportedly followed what Rising now says is his firm's business model—pleading cases rather than trying them. We acknowledge that the Sixth Amendment right to representation "includes the right to representation that is

11

free from conflicts of interest." *Gardner v Galetka*, 568 F.3d 862, 886 (10th Cir.2009). If a conflict is established, prejudice is presumed. *Id.* at 886. Yet when a conflict of interest is raised for the first time on collateral attack, the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

"An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client." *United States v. Alvarez* 137 F.3d 1249, 1252 (10th Cir. 1998). "'[T]o demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party.'" *Id.* (quoting *Danner v. United States*, 820 F.2d 1166, 1169 (11th Cir. 1987)). A mere possibility of a conflict is insufficient. *See Cuyler*, 446 U.S. at 50.

Here, Rising simply states that the law firm's business model existed and affected counsel's decision making. But he never alleges any specific instances where his counsel acted to promote the interests of the firm over his interests. Quite simply, Rising has failed to establish an actual conflict.

### iii. Ineffective Assistance Resulting in an Excessive Sentence and Failure to Perfect an Appealable Error

Rising claims that ineffectiveness of counsel led to an excessive sentence and a failure to perfect an appealable error. Rising alleges the existence of a "secret agreement" between defense counsel and the prosecution to stipulate to $3.5 million as the amount of loss that would be used to calculate the guideline range under the

12

Sentencing Guidelines. Rising appears to allege that his counsel was ineffective because he did not negotiate a lower figure. As mentioned, in the plea agreement the parties stipulated to a loss of more than $2.5 million but not more than $7 million. Under the Sentencing Guidelines applicable in this case, losses of more than $2.5 million but not more than $7 million fall under U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(J) (U.S. Sentencing Comm'n 2010), adding 18 levels. Rising's assertion that he provided the government with evidence proving that the loss was less than $2.5 million fails the prejudice prong of *Strickland* since he stipulated on the record that his offense involved losses between $2.5 million and $7 million.

To succeed on his claim that his counsel was ineffective for allowing an excessive sentence, Rising must show that his sentence was in fact excessive. Rising's sentence was below his advisory-guideline sentencing range, and we thus presume its reasonableness. *United States v. Perez-Jiminez*, 654 F.3d 1136, 1147 (10th Cir. 2011). Because Rising's sentence was properly calculated, he cannot succeed on his ineffective-assistance-of-counsel claim based on his receiving an excessive sentence.

### c. Prosecutorial Misconduct

Rising argues prosecutorial misconduct, specifically that the prosecution erred in not presenting exculpatory evidence to the grand jury. Rising's allegation of wrongdoing on the prosecutor's part is misplaced. "A grand jury investigation is not an adversarial process." *United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998); *see United States v. Williams*, 504 U.S. 36, 51, 55 (1992) (holding that the

13

government need not present exculpatory evidence in its possession to the grand jury). Regardless, as the district court pointed out, Rising's guilty plea precludes inquiry into the merits of defenses applicable to the indictment. *See* Order 31, Nov. 4, 2014 (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)).

### d. Actual Innocence

Rising argues actual innocence. This claim is precluded by his guilty plea and his statements to the district court during the Rule 11 hearing. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, . . . [h]e may only attack the voluntary and intelligent character of the guilty plea . . . ." *See Tollett*, 411 U.S. at 267. As the district court correctly notes, Rising has not challenged that he pleaded guilty voluntarily and intelligently. When he pleaded guilty, Rising provided the court a factual basis to support his guilty plea. Additionally, Rising confirmed to the court that he understood he was waiving his right to a trial and his rights at trial. Rising offers no additional evidence to support his claim and merely challenges the sufficiency of the government's evidence. That argument is barred.

### III. Conclusion

Based on the foregoing, we DENY the certificate of appealability. We DENY

14

Rising's motion for an expedited appeal as moot and DISMISS this appeal.

Entered for the Court


Gregory A. Phillips
Circuit Judge